## A. A. McKETHAN *v.* ALEX. MURCHISON and JOHN McKAY.

Where A, one of the creditors of B, by contract with other creditors of B, purchased at an execution sale B's land, to be held in trust for the payment of their respective debts, and A, having received payment of his debt from the sale of said land, sold the same to C, who again sold it to D: *Held*, that, in an action by F, one of the creditors of B, to enforce against D the said contract and trust, A and D were necessary parties.

(*Kelly* v. *Bryan*, 6 Ired, Eq. 283; *Day* v. *Howard*, at this term; and *Edwards* v. *The University*, 1 Dev. & Bat. Eq. 325, cited and approved.)

This was a CIVIL ACTION, tried before *Buxton, J.*, at Fall Term, 1874, RICHMOND Superior Court.

This action was commenced by summons on the 14th of December, 1871, for the purpose of enforcing an alleged equity in favor of the plaintiff, in respect to a large tract of land in Richmond county, the legal title to which, once held by the defendant Murchison, was sold by the United States Marshal, under an execution issuing from the Federal Court against Murchison in favor of one of his creditors and was bought by the defendant, John W. McKay.

The land referred to was included in an entry made by one John McKeller on the 1st day of January, 1853, and for which he obtained a grant from the State for 10,572 acres on the 29th of December, 1855. A junior entry including the same land was made by one Walter F. Leake on the 10th January, 1853, with notice of the prior entry of McKeller, and Leak obtained a grant from the State for 7,050 acres, dated 15th of December, 1853.

At June Term, 1856, of Cumberland County Court, (being appearance term) judgment by confession dated 7th June, 1856, was rendered in favor of one Thos. S. Lutterloh against McKeller for $2,000 and cost, in case No. 220 on the appearance docket. On the same day and at the the same term there were two similar judgments rendered in favor of the firm of D. & W. McLaurin, against McKeller : one for $800 and costs, and the other for $750 and cost, in cases No. 221 and 222 on the appearance docket. Executions were issued on these three judgments and were levied on the interest of McKeller in 5,894½ rcres of land in Cumberland county, and return made to September Term, 1856, of a sale of defendant's interest in the land levied on to Thos. S. Lutterloh for $2,567.47, of which $1,447.98 was applied to Lutterloh's execution, he receipting for that amount thereon, and the balance $1,119.49 was applied to the two executions in favor of D. &. W. McLaurin, leaving a balance due on all three of the executions.

At September Term, 1856, another judgment was rendered against McKeller, being a judgment by default final upon an acknowledgment of service in No. 135, and Alexander Murch-

son for $1,755.28 of which sum $1,744.00 is principal money. Executions subsequently issued upon all of these judgments to the Sheriff of Richmond county and was levied on McKeller's interest in the 10,572 acres of land aforesaid, also on some other land claimed by him in Richmond county. The execution in favor of Thos. S. Lutterloh and the two in favor of D. & W. McLaurin were levied September 26th, 1856, and the execution in favor of A. A. McKethan and Alexander Murchison was levied October 17th, 1856. Under these levies a sale was made by the Sheriff of Richmond county on the 16th day of March 1858, Thos. S. Lutterloh becoming the purchaser of the 10,572 acres at $300, and of the residue of the land for $56, making in all $356, of which $8.90 was applied to the payment of the sheriffs commissioners and of the balance $195.55 was applied to the payment of Lutterloh's execution, he receipting for the same and $151.55 was applied to the execution in favor of D. & W. McLaurin, and none was applied to the payment of the execution in favor of McKethan & Murchison. A previous sale had been advertised to take place in December, 1856, under the foregoing levies, but the sale was returned " postponed on account of stress of weather."

The sheriff of Richmond county executed to Thos. S. Lutterloh a deed for the 10,572 of land, dated 16th March, 1857, the consideration of which was $300. Thos. S. Lutterloh executed a deed for the said land to Alexander Murchison, dated December 7th, 1859, the consideration of which deed was $100.

Walter F. Leak executed a deed for the 7,050 acres of land to Alexander Murchison, dated 21st of March, 1861, the consideration of which was $705.

The interest of Alexander Murchison in this Richmond county land was levied on and sold by the United States Marshal under an execution issuing from the United States Circuit Court, at Raleigh, upon a judgment in favor of Evander McNair for $2,000, and at the sale, the defendant, John W. McKay, bought the land on March 9th, 1869, for $525.

The United States Marshal, Samuel T. Carrow, executed a deed to John W. McKay, dated 6th December, 1871.

After commencement of this action John W. McKay and wife executed a deed for this land to Dr. W. J. Hawkins, on the 20th January, 1872.

The foregoing is an abstract of the legal title. The equity claimed is based upon an alleged contract between the judgment creditors of McKeller, to-wit: Thomas S. Lutterloh, D. & W. McLaurin, A. A. McKethan and Alexander Murchison, that Lutterloh should buy the Richmond county lands of McKeller and hold the same for the joint benefit of himself and the other creditors. That Lutterloh did so buy them and hold them until he had satisfied his his own debts and that of D. W. McLaurin, and then passed the title to Murchison without consideration, for the purpose of securing the debt of McKethan & Murchison; that a trust was thereby created in Murchison, in respect to said land in behalf of himself and the plaintiff, which still continued, as their joint judgment against McKeller was still unpaid. And that when John W. McKay bought the land at execution sale made by the United States Marshal, under an execution against Murchison, he took the legal title *cum onere*, and stood in the place of Murchison and was affected by the trust.

The defendants, who filed separate answers, deny the equity alleged by the plaintiff. Murchison denied that he was a party to any such agreement, and alleged that he bought for himself from Lutterloh, without notice of any outstanding equity in the plaintiff, and for a valuable consideration, and that in addition to Lutterloh's title, he had bought the title of Walter F. Leake and taken a deed from him.

John W. McKay answered, alleging that he had bought the land at execution sale, without knowledge of plaintiff's claim or equity thereto, and had sold the same to Dr. W. J. Hawkins, before the commencement of this action, and prior to notice of the plaintiff's claim or equity thereto, if there was any equity, and had passed the title in January, 1872.

Before the jury was empannelled, the defendants moved to dismiss the action for want of jurisdiction, because in the prayer for judgment partition was sought, and the Probate Court was the proper Court to make partition.

The plaintiff resisted the motion on the ground that partition was not the relief sought, that the plaintiff desired that his rights might be ascertained and adjudged with the ultimate view of partition, should he be entitled thereto, which, if necessary, he would seek in the proper Court.

The motion was overruled and the defendants reserved leave to except.

Fourteen issues were submitted to the jury, and the defendants propounded a fifteenth, in these words: "Was the arrangement between Thos. S. Lutterloh, D. & W. McLaurin, A. A. McKethan and John McKeller, made for the purpose of hindering other creditors?" The issue was excluded by the Court on the ground that it did not arise upon the pleadings, and the defendants reserved leave to except.

The witnesses were numerous, their examination protracted, and their evidence conflicting. No objection was taken to the admissibility of evidence or the charge of his Honor.

The following are the issues submitted to the jury, and the responses thereto:

1. Did Thos. S. Lutterloh purchase the land in dispute at sheriff's sale, for himself and the other creditors of John Mc-Keller, viz: D. & W. McLaurin, Alexander Murchison and A. A. McKethan?

Answer. Yes.

2. Did Alexander Murchison agree to or sanction the purchase by Lutterloh for himself and the other creditors?

Answer. Yes.

3. Did Alexander Murchison purchase the land from T. S. Lutterloh, for value and without notice?

Answer. For value, with notice.

4. Did Alexander Murchison receive a conveyance for the

land in dispute, without consideration and for the purpose of holding the same for the use of himself and the plaintiff?

Answer. Received conveyance for consideration for the purpose of holding it for himself.

5. Was the deed from Dr. John W. McKay to Dr. W. J. Hawkins, executed before the commencement of this action?

Answer. No.

6. Did Walter L. Leak, at the time of making his entry of the land in dispute, have notice of the prior entry of John McKeller?

Answer. Yes.

7. Did John W. McKay, at the time of his purchase at marshal's sale, have actual notice of plaintiff's equity?

Answer. No.

8. Did John W. McKay contract, in writing, to sell the land in dispute to Dr. W. J. Hawkins, assignor, before notice of plaintiff's equity?

Answer. Yes.

9. Did plaintiff offer to pay to Dr. John W. McKay one-half of the sum paid to Walter F. Leak, and did the said McKay refuse said offer and decline to state the amount paid to said Leak?

Answer. Yes.

10. Did Alexander Murchison purchase from W. F. Leak for the purpose of perfecting his own title?

Answer. Yes.

11. Did Alexander Murchison have notice of the trust in Thos. S. Lutterloh for the benefit of plaintiff and others, when he received the deed from him.

Answer. He did previous to receiving the deed.

12. Was the alleged agreement referred to in the complaint, under which the plaintiff seeks to charge the defendants, in writing, and signed by the parties to be charged therewith?

Answer. No.

13. Was there ever any agreement in writing between these

parties or any of them, that the land should be held in trust, as alleged ?

Answer. No.

14. Was the purchase money paid before the execution of the deed from John W. McKay to Dr. W. J. Hawkins ?

Answer. No.

Upon the finding of the jury upon the issues, the plaintiff moved the Court for judgment :

1. That the defendants be declared trustees for the use of the plaintiff.

2. For a decree selling the land to pay the debt due plaintiff.

The defendants moved the Court for judgment that they go without day and recover costs.

His Honor overruled the motion of the plaintiff, and dismissed the action.

From this judgment, the plaintiff appealed.

*Steele & Walker* and *Ray*, for the appellant.

*W. McL. McKay, Pemberton, Neill McKay* and *Smith & Strong,* contra.

Pearson, C. J. We were inclined at the hearing, after the well considered and able argument of Mr. Ray, to overrule his Honor, and to hold that upon the findings of the jury on the issues submitted, there was error in the judgment dismissing the action, and that judgment should have been entered for the plaintiff, at least for the amount of his debt and interest, if not, for a ratable part of the fund in the hands of McKay. This larger equity being put on the ground, that Lutterloh bought the land and took a deed for the use of himself and of McLaurin, and Murchison, and McKethan, creditors of Mc-Kellar, under an agreement that he would act as agent for them, this created an *express* trust, that is, one by consent of parties, as distinguished from a *constructive* trust, that is, one made by a Court of equity, whereby a person against his

consent, is *converted* into a trustee by reason of fraud, bad faith and the like.

The objection that this trust, created by agreement, was void, because not evidenced by writing, is met by the case, *Hargan* v. *King*, and that class of cases. Let it be noticed, that this class differs from the class of cases where the *maker of a deed*, absolute upon its face, seeks to convert it into a deed to secure the payment of a debt, to-wit, a mortgage, on the ground that the deed was obtained by fraud, accident, mistake or oppression, of which class, *Staton* v. *Jones* and *Kelley* v. *Bryan*, 6 Ired. Eq., 283, are the leading authorities. And it differs from the class of cases, in which it is held, that " an agreement to sell or convey land or any interest therein, unless there be some note or memorandum thereof in writing, &c., shall be void." The cases under this class, are such as reject the doctrine of part performance, and are too tedious to mention.

The learned Judge held, the agreement " that Lutterloh would buy the land for himself and McLaurin, (they having priority to the amount of their debts,) and for the defendant and Murchison, was void, because not reduced to writing, and did not attach itself as a trust to the land in the hands of Lutterloh. There is error. His Honor did not advert to the distinction settled by the class of cases represented by *Hargan* v. *King*, " between an agreement *relating to land*," and a agreement to *sell* or *convey* land.

Assuming that a trust attached to the land in the hands of Lutterloh, and assuming also that the debts of Lutterloh and McLaurin were satisfied, and that they had relinquished all for their interest in the trust fund, as is alleged in the complaint (Note : This fact is not found by the jury.) Then it follows upon plain principles of equity, that Murchison who purchased the land of Lutterloh for value, but with notice. (3d issue, held it subject to the trust of McKethan ; it also follows, upon plain principles of equity, that as Murchison had become trustee, his purchase of the title of Leak, was for the benefit of the trust fund and operated by way of extinguishment; it also fol.

lows, upon plain principles of equity, that McKay being a purchaser at execution sale, took the place of Murchison and acquired no more than what he could rightfully convey ; in other words, stood in the place of a purchaser with notice. It also follows upon plain principles of equity, that the plaintiff has his election to charge McKay with his proportionate part of the trust fund, into which the land has been converted, or to follow the land itself in the hands of Hawkins, who had notice of the trust in favor of plaintiff before he paid the price and took a deed for the land, and was not obliged to go on with an executory contract made (as we will suppose) before he was put on inquiry in respect to the incumbrances upon the title of McKay.

The other two positions taken by his Honor in support of the judgment are not tenable.

1. *Mutual promises* constitute a valuable consideration ; this is settled.

Besides this McKethan performed his promise by assigning the execution in favor of himself and Murchison to Lutterloh, to be made available, if necessary, to satisfy his bid for the land.

2. It is "*a stale demand*," that is as we understand his Honor to mean, a demand barred by the statute of limitations or by the principles of the common law.

At what time Murchison bought the land of Lutterloh is not set out in the case—it was after March, 1857. For that was the date of Lutterloh's purchase, which created the trust. Suppose this act of Murchison in buying the land, and taking an absolute deed from Lutterloh, was a disavowal of his relation to McKethan as tenant in common, and amounted to an "actual ouster" so as to put the Statute of Limitations in motion, as to which a good deal could be said. See *Day* v. *Howard*, at this term.

The time in which an equity, raised by the Court in regard to land can be barred in analogy to the statute of Limitations, is seven years. *Edwards* v. *University*, 1 Dev. & Bat. Eq. 325. Counting out 1861 to 1870. the statute is no bar. The doctrine of "*stale demands*," which the courts have in the ab-

sence of legislation felt called upon to administer, was never resorted to in England under twenty years, and in this State ten years.

We do not feel at liberty to express any decided opinion upon the matters of law above set out, so as to exclude further argument and discussion, because we consider the objection for want of parties well taken, *ore tenus* and in this Court for the first time. Lutterloh is a necessary party, because he was the original trustee, and ought to be heard, and concluded in respect to his *selling* the trust fund to Murchison, and in respect to the alleged satisfaction of his debt and his relinquishment of all further claim to the trust fund, which as it turns up is much in excess of an amount sufficient to pay the *debts* of the respective parties, to the agreement under which Lutterloh took the legal title. The question is presented after the satisfaction of the debts of Lutterloh and McLaurin and of Murchison and McKethan, the trust fund being in excess, how is it to be disposed of? Clearly Lutterloh is concerned in this question, and clearly McLaurin is also concerned in it.

We also think that Hawkins is a necessary party, for if the plaintiff gets judgment, and McKay fails to pay, then the plaintiff may follow the land having his election to take the trust fund in its converted state that is the $7000 in the hands of McKay, or to hold on to the land in its unconverted state, which would bear on Hawkins.

Our conclusion is, that in order to have a judgment binding upon all persons concerned and settling all matters of controversy in respect to the many transactions in regard to this land, the case be remanded to the end that all proper parties be made. The plaintiff will pay the cost of this Court. In the Court below he will have the benefit of the issues found by the jury, that verdict stands as between the present parties. New issues will only be submitted upon allegation of the new parties, who may be brought in as plaintiffs or defendants, as they are advised.

Per Curiam. Case remanded to make parties.